**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**ELIEZER FIGUEROA TORRES,**

       **Plaintiff,**

v.                   **DECISION AND ORDER**
                      **17-CV-655**
**NANCY A. BERRYHILL, Acting**
**Commissioner of Social Security,**

       **Defendant.**

## INTRODUCTION

    Plaintiff Eliezer Figueroa Torres brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied his application for supplemental security income ("SSI") under Title II of the Act. Dkt. No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405 (g).

    Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. Nos. 9, 11. For the reasons that follow, Plaintiff's motion is DENIED, and the Commissioner's motion is GRANTED.

## BACKGROUND

    On April 23, 2013, Plaintiff protectively filed for SSI benefits with the Social Security Administration ("SSA") alleging disability beginning on that same date. Tr.[1] at 21. On August 28, 2013, Plaintiff's claims were denied by the SSA at the initial level,

---
[1]  References to "Tr." are to the administrative record, which appears at Docket No. 7.

and he timely requested a hearing.  Tr. at 77-81.  On June 19, 2015, Plaintiff, represented by counsel, appeared and testified before Administrative Law Judge William M. Weir ("ALJ Weir" or "the ALJ").  Tr. at 34-65.  Timothy P. Janikowski, Ph.D., an impartial vocational expert, also testified.  Tr. at 57-65.

On February 3, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 21-29.  Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on May 17, 2017.  Tr. at 1-7, 153-55.  Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision.  Dkt. No. 1.

## LEGAL STANDARD

**District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation

marks omitted); see also *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 ("Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental

work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**ALJ's Determination**

The ALJ's decision analyzed the plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff's earnings after his application date fell below substantial gainful activity levels.[2] Tr. at 23. At step two, the ALJ found that Plaintiff has "status post right hand and wrist surgery," which constitute severe impairments. Tr. at 23. Here, the ALJ also found that Plaintiff's substance addiction disorder, major depressive disorder and adjustment disorder were non-severe

---

[2] Plaintiff alleges that he did not work at all after his alleged onset date and that another person or person used his social security number to earn wages attributed to him after the relevant date. Tr. at 23.

impairments.  *Id.*  At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listings impairment.  Tr. at 25.

Next, the ALJ determined that Plaintiff retained the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: an inability to use his right dominant hand other than a guide or assist."  Tr. at 25.  At step four, the ALJ found that Plaintiff was unable to perform his past work as a "washer carcass" as it requires constant use of both hands.  Tr. at 28.  Considering plaintiff's age of 34 (a younger individual), marginal education, ability to communicate in English, work experience, and RFC, the ALJ relied on the testimony of the VE in concluding that Plaintiff would be able to perform the jobs of "blending tank tender," "laminating machine off bearer," and "bakery worker, conveyor," which exist in significant numbers in the national economy.  Tr. at 29.  Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act from April 23, 2013, the date he filed his application, through February 3, 2016, the date of the decision.  Tr. at 29.

**DISCUSSION**

The plaintiff argues that the ALJ's decision is unsupported by substantial evidence because he failed to contact Plaintiff's treating physician, Dr. Glennell R. Smith ("Dr. Smith") to develop the record; erroneously gave Dr. Smith's opinion little weight in violation of the treating physician's rule and erred by not including Plaintiff's mental limitations in making his RFC determination.  Dkt. No. 9-1, pp. 7-12.  The Commissioner contends that the ALJ was not legally required to recontact Dr. Smith, his

analysis of Plaintiff's RFC was appropriate, and his decision is supported by substantial evidence. Dkt. No. 11-1, pp. 13-19. For the reasons set forth below, this Court finds that the ALJ committed no reversible error and that substantial evidence supports his RFC determination.

**Plaintiff's Treating Physician's Opinion and Development of the Record**

Plaintiff contends that the ALJ erred in giving "little weight" to Dr. Smith's opinion that Plaintiff was disabled and in not contacting the doctor for clarification. Specifically, Plaintiff refers to Dr. Smith's July 22, 2014 notation written on a prescription that Plaintiff was "having significant hand and back pain and is unable to work at this time." Tr. at 318, 380. The 'treating physician' rule requires ALJ's to give "deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). Specifically, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)). "Medically acceptable clinical and laboratory diagnostic techniques include consideration of a patient's report of complaints, or history, as an essential diagnostic tool." *Id.* (quotation marks and brackets omitted).

An ALJ may decline to give "controlling" weight to the opinion of a claimant's treating physician, but must "consider several factors in determining how much weight [the physician's opinion] should receive," *Id.* at 129, including:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Ecklund v. Comm'r*, 349 F. Supp. 3d 235, 242 (W.D.N.Y. 2018) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

If an ALJ decides to not give "controlling" weight to a claimant's treating physician, "the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129 (quotation marks omitted). The ALJ need not "explicitly walk through" the factors identified above, "so long as the Court can conclude that the ALJ applied the substance of the treating physician rule." *Eckland*, 349 F. Supp. at 242 (quotation marks omitted). Nonetheless, "[f]ailure to provide . . . good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Burgess*, 537 F.3d at 129-30 (quotation marks omitted). Because the "'good reasons' rule exists to ensure that each denied claimant receives fair process, an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record." *McCarthy v. Colvin*, 66 F. Supp. 3d 315, 323 (W.D.N.Y. 2014) (quotation marks and citations omitted). Of course,

7

the ALJ's reasons for discounting a treating physician's opinion must also be "supported by [specific] evidence in the case record." *Id.* at 323 (quotation marks omitted).

Dr. Smith first saw Plaintiff for right hand pain on February 20, 2014, approximately 10 months after his alleged onset date of April 23, 2013. Tr. at 156, 342. Plaintiff reported that had not seen a doctor for two and a half years. Tr. at 354. Dr. Smith noted that Plaintiff had no deformity of the right hand, that his hand was "normal to inspection and palpation" with no instability and 5/5 strength, normal muscle tone and full range of motion. Tr. at 353. Dr. Smith noted that Plaintiff's gait was normal, his neck normal to palpation with physiologic range of motion, and his upper and lower extremities were normal to inspection with full range of motion. Tr. at 353. On March 30, 2014, Plaintiff returned to Dr. Smith with complaints of right hand and back pain. Tr. at 370-71. Dr. Smith made the same unremarkable findings regarding Plaintiff's hand, gait, neck, and upper and lower extremities. Tr. at 372.

Plaintiff next saw Dr. Smith on July 22, 2014. Tr. at 376. A recent x-ray revealed that Plaintiff had intact hardware in his hand from prior surgeries, fusion of the carpal bones and radial carpal articulation, no soft tissue stone, and normal bony mineralization. Tr. at 375. Despite normal findings regarding Plaintiff's gait, neck, hand, and upper and lower extremities consistent with Plaintiff's prior two visits, Dr. Smith filled out the aforementioned prescription slip in which he stated that Plaintiff was unable to work. Tr. at 377, 380. Approximately eight months later, on April 14, 2015, Dr. Smith examined Plaintiff who complained of right arm pain. Tr. at 390. Again, Dr. Smith's

8

findings regarding Plaintiff's gait, neck, shoulders, elbows, and upper and lower extremities were all normal. Tr. at 391. Apparently, Dr. Smith did not examine Plaintiff's hand at this appointment. Tr. at 391.

The ALJ gave numerous reasons for rejecting Dr. Smith's opinion that Plaintiff was unable to work due to his hand and back pain. First, ALJ Weir noted that this conclusion was not supported by the objective medical evidence, including Dr. Smith's own treatment notes detailed above. In rejecting that Plaintiff's symptoms were as intense, persistent, and limiting as he claimed, the ALJ found that Dr. Smith "[t]reatment notes indicate no limitations to claimant's musculoskeletal system . . . , and the record does not suggest the claimant had any limitations with grasping or handing with his right hand." Tr. at 27.

The ALJ noted that another doctor, consulting examiner Dr. Donna Miller ("Dr. Miller"), who examined Plaintiff on August 6, 2013, did not find that Plaintiff's pain rendered him unable to work. Tr. at 27, 297-300. Rather, during her examination of Plaintiff, Dr. Miller noted that he had a normal gait and demonstrated a full range of motion in the cervical and lumbar spine. Tr. at 27, 298-99. Although Plaintiff demonstrated decreased range of motion in the right wrist and decreased dexterity with his right hand and fingers, he had 4+/5 grip strength in his right hand. Tr. at 27, 300. He was able to tie and button using both hands and could use Velcro and a zipper with his left hand. Tr. at 27, 300. Dr. Miller's conclusion that Plaintiff had a moderate limitation for repetitive gripping, grasping and motion of the right hand was more

9

consistent with the record and the objective medical evidence than Dr. Smith's opinion that Plaintiff could not work due to back and right-hand pain.

Finally, ALJ Weir noted that when Plaintiff went for his annual physical with Dr. Raul Vasquez ("Dr. Vasquez") in June of 2015, he reported that he was exercising sporadically but was experiencing increased pain in his right hand due to "repetitive use," which the ALJ noted, "suggests that he had been performing some sort of repetitive activity with his hands." Tr. at 28. Plaintiff's ability to perform such activity with pain limited only to his right hand supports the ALJ's conclusion that Plaintiff could perform a full range of work at all exertional levels but was unable to use his right dominant hand as anything other than a guide or an assist. Tr. at 25, 28.

Based on the foregoing, this Court finds that the ALJ's treatment of Dr. Smith's opinion did not violate the treating physician rule. Although treating physicians may share their opinions concerning a patient's inability to work, the ultimate decision of whether an individual is disabled is "reserved for the Commissioner." 20 C.F.R § 404.1527(d)(1). In this regard, the ALJ is not required to give controlling weight to conclusory statements about whether or not a claimant is disabled. *See Donnelly v. Barnhart*, 105 Fed. App'x 306, 308 (2d Cir. 2004) (holding that the ALJ "properly discounted" portions of doctors' opinions which made conclusory statements as to whether plaintiff was disabled). It is, in fact, the role of the ALJ to compare specific medical opinions against the record as a whole, and to reject those opinions that are inconsistent with the evidence. *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7-8 (2d

Cir. 2017) (holding that the ALJ did not violate the "treating physician" rule, where ALJ determined that the treating doctor's treatment notes often stated that the claimant's mood was "stable" or "good," contradicting the doctor's restrictive RFC assessment). ALJ Weir fulfilled this responsibility when he rejected Dr. Smith's opinion that Plaintiff was unable to work and offered "good reasons" for doing so.

Plaintiff's contention that the ALJ should have contacted Dr. Smith to supplement the record is likewise unavailing. "[W]here, as here, the particular treating physician's opinion that is at issue is unsupported by any medical evidence and where the medical record is otherwise complete, there is no duty to recontact the treating physician for clarification." *Jasen v. Comm'r of Soc. Sec.*, No. 16-CV-6153P, 2017 WL 3722454, at *12 (W.D.N.Y. Aug. 29, 2017) (quoting *Ayers v. Astrue*, 2009 WL 4571840, *2 (W.D.N.Y. 2009)). In such a case, the relevant inquiry is whether the record was sufficient to support the ALJ's RFC assessment. *See Kunkel v. Comm'r of Soc. Sec.*, 2013 WL 4495008, at *16 (W.D.N.Y. 2013). It bears noting that ALJ Weir did not reject Dr. Smith's opinion because Plaintiffs treatment records were incomplete. Rather, the ALJ gave little weight to Dr. Smith's restrictive conclusion because it was contradicted by the record as a whole, including Dr. Smith's objective medical findings. As such, the ALJ had no legal obligation to recontact Dr. Smith or supplement the record.

**Plaintiff's Alleged Mental Impairments**

Plaintiff alleges that the ALJ failed to take into consideration his admittedly "mild" mental health impairments in determining his RFC. Having reviewed the ALJ's

decision and the underlying opinions regarding Plaintiff's mental health provided by Dr. Amy Jo Cras-Stafford ("Dr. Cras-Stafford") and Dr. J. Straussner ("Dr. Straussner"), this Court finds that there is nothing that compelled the ALJ to include additional limitations, such as the need for supervision, in Plaintiff's RFC.  Dr. Cras-Stafford affirmatively stated that Plaintiff exhibited "no evidence of limitation," that the results of her evaluation of Plaintiff did "not appear to be consistent with any psychiatric problems that would significantly interfere with the claimant's ability to function or manage stress on a daily basis," and that his "[d]ifficulties appear to be due to a lack of motivation."  Tr. at 303-04.  Dr. Straussner observed on August 27, 2013, that Plaintiff had "adequate social skill, appropriate eye contact, clear and coherent thought patterns," appropriate mood and affect, good insight and judgment, and intact attention, concentration and memory skills.  Tr. at 71.  The ALJ appropriately gave significant weight to these opinions in concluding that Plaintiff required no mental health restriction in his RFC.  *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (holding that the report of a consulting physician may constitute substantial evidence under certain circumstances).  Accordingly, the ALJ did not err in declining to include such limitations in Plaintiff's limitations in his RFC.

**Substantial Evidence Supports the ALJ's RFC Findings**

This Court finds that ALJ Weir's assessment that Plaintiff could perform a full range of work at all exertional levels but with "an inability to use his right dominant hand other than a guide or assist" is supported by substantial evidence.  Tr. at 25.

Despite Plaintiff's assertions to the contrary, the record does not support his claims of more severe impairment.

## **CONCLUSION**

For the reasons stated herein, the Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is hereby DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 11) is hereby GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED: Buffalo, New York
April 26, 2019

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**